**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BIC CORPORATION AND BIC USA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CHICAGO IMPORT, INC., et al., <br><br> Defendants | |
| CHICAGO IMPORT, INC., <br><br> Cross-Plaintiff, <br><br> v. <br><br> CHOICE TRADING INTERNATIONAL, LLC, et al., <br><br> Cross-Defendants | Judge John Robert Blakey <br><br> 18-cv-7378 |
| CHICAGO IMPORT, INC., <br><br> Third-Party Plaintiff, <br><br> v. <br><br> CTIL, LLC, <br><br> Third-Party Defendant. | |

**MEMORANDUM OPINION AND ORDER**

In 2018, BIC Corporation and BIC USA, Inc. (hereinafter BIC) sued Chicago Import, Inc., Guru Taneja, Choice Trading International, and Choice Trading for trademark infringement. BIC alleged that the Defendants illegally imported and sold BIC-branded lighters in the United States (known as "gray market lighters"), which BIC claimed were intended solely for overseas distribution and did not contain federally mandated enhanced child-resistant technology. BIC ultimately settled with the various Defendants, and this Court entered stipulated permanent injunction orders closing out BIC's complaint. Chicago Import, however, still maintains a cross-claim against Guru, Choice Trading International, and Choice Trading, and has brought a third-party claim against another related entity, CTIL, which Chicago Import alleges is related to the cross-claim Defendants. The cross-claim and third-party complaint alleges that Chicago Import purchased the offending lighters from Guru and the companies, and seeks redress from them under various state-law theories, including indemnification from being forced to defend against BIC's complaint. The various cross-claim Defendants and third-party Defendant now move to dismiss the operative second amended cross-claim and third-party complaint. [242]; [244]; [248]; [249]; [250]. For the reasons explained below, this Court denies their motions.

I. **Background**

    A. **The Parties**

Cross-Plaintiff/Third-Party Plaintiff Chicago Import is an Illinois corporation that maintains its principal place of business in Chicago, Illinois. [238] at ¶ 1.

Cross-claim Defendant Gurpreet Singh Taneja (hereinafter Guru) is a New Jersey citizen. *Id.* at ¶ 2. At the start of this litigation, Cross-claim Defendant Choice Trading International was a New Jersey limited liability company of which Guru was the sole member. *Id.* at ¶ 3. Guru voluntarily dissolved Choice Trading International during the pendency of this case. *Id.* Cross-claim Defendant Choice Trading is a New Jersey limited liability company with its principal place of business in Guttenberg, New Jersey. *Id.* at ¶ 4. Guru and his wife are Choice Trading's only members, and the couple lives in Fort Lee, New Jersey. *Id.*

Third-party Defendant CTIL is a New Jersey limited liability company with its principal place of business in Guttenberg, New Jersey. *Id.* at ¶ 5. Guru is the sole member of CTIL. *Id.*

### B. The Underlying Complaint and Procedural History

In 2018, BIC sued Chicago Import, Guru, Choice Trading, and Choice Trading International, among others. [1]. As alleged in its fourth amended complaint, BIC manufactures disposable lighters; in the United States, they sell only non-refillable pocket lighters with enhanced child-resistant technology as required by federal law. [167] at ¶ 46. BIC owns and uses various trademarks and source-identifying product configurations to indicate the origin of its lighters. *Id.* at ¶ 38.

BIC alleged that in May and August 2017, and September 2018, Choice Trading and Choice Trading International (the Choice Defendants), entities directed and controlled by Guru, unlawfully sold and shipped BIC-branded lighters that were neither manufactured nor intended for distribution in the United States (gray market

3

lighters) to Chicago Import. *Id.* at ¶¶ 1, 61. According to BIC, Chicago Import then sold the gray market lighters to a variety of wholesalers, distributors, and retailers in Illinois and other states. *Id.* at ¶ 62. These actions, BIC alleged, violated the Lanham Act and other federal laws. *Id.* at ¶ 75. In July and September 2020, BIC settled its claims against Guru, the Choice Defendants, and Chicago Import, and this Court subsequently dismissed Plaintiffs' claims with prejudice upon entering stipulated permanent injunction orders. [219]; [220]; [221].

In January 2019, before BIC's complaint had settled, Chicago Import filed a cross-claim against Guru and the Choice Defendants. [35]. With leave of Court, Chicago Import amended its cross-claim in July 2019, [116], and the cross-claim Defendants moved to dismiss this amended cross-claim, [120]; [122]; [124]. Then, again with leave of Court, in December 2020, Chicago Import filed a second amended cross-claim against the cross-claim Defendants and a third-party complaint against CTIL, LLC. [238]. This Court, accordingly, denied the cross-claim Defendants' original motions to dismiss. [237].

### C. The Second Amended Cross-Claim and Third-Party Complaint

In its second amended cross-claim and third-party complaint, Chicago Import brings claims for: (1) indemnification under the Uniform Commercial Code (UCC) against the Choice Defendants (Count I); (2) breach of implied warranty under the UCC against the Choice Defendants (Count II); (3) breach of warranty of fitness for a particular purpose under the UCC against the Choice Defendants (Count III); (4) "alter ego/piercing the corporate veil" against Guru, Choice Trading, and CTIL (Count

4

IV); (5) successor liability against CTIL (Count V); (6) unjust enrichment against the Choice Defendants and CTIL (Count VI); and (7) "Liability of Guru . . . , Choice Trading . . . , and CTIL for the Dissolution of Choice Trading International" (Count VII). [238].

The various cross-claim Defendants and third-party Defendant now move to dismiss the claims against them. Guru moves to dismiss the counts against him pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). [242]; [248]. The Choice Defendants move to dismiss the counts against them under Rules 12(b)(1) and 12(b)(6). [244]; [249]. And CTIL moves to dismiss the counts against it pursuant to Rules 12(b)(2) and 12(b)(6). [250]. Chicago Import opposes each motion.

## II. Legal Standards

Rule 12(b)(1) allows a defendant to raise a defense that the Court lacks subject matter jurisdiction. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). Under Rule 12(b)(1), this Court must construe Plaintiff's complaint in the light most favorable to Plaintiff, accept as true all well-pleaded facts, and draw reasonable inferences in its favor. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Courts evaluating Rule 12(b)(1) motions may look beyond the complaint to consider whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. *Silha*, 807 F.3d at 173 (noting that a court "may look beyond the pleadings and view any evidence submitted" when reviewing a challenge that there is *in fact* no subject matter jurisdiction, even if the pleadings are formally sufficient).

5

A motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) tests whether this Court has the "power to bring a person into its adjudicative process." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (quotation omitted). The plaintiff need not allege facts concerning personal jurisdiction in his or her complaint, but "once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). When a court rules on a Rule 12(b)(2) motion based upon written submissions without holding an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. *Id.* at 392–93; *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009).

Under Rule 12(b)(6), this Court must construe the complaint in the light most favorable to Plaintiff, accept as true all well-pleaded facts, and draw reasonable inferences in its favor. *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). The Court need not, however, accept as true statements of law or conclusory factual allegations. *Divane v. Nw. Univ.*, 953 F.3d 980, 987 (7th Cir. 2020). Rule 12(b)(6) limits this Court's consideration to allegations set forth in the complaint itself, documents attached to the complaint, documents central to the complaint and referred to in it, and information properly subject to judicial notice. *O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020).

### III. Analysis

The cross-claim Defendants and third-party Defendant advance various arguments in support of dismissal. This Court addresses their jurisdictional arguments under Rules 12(b)(1) and 12(b)(2) before turning to their arguments under Rule 12(b)(6).

#### A. Subject Matter Jurisdiction

In their opening motions, Guru and the Choice Defendants argued that Counts I–IV, VI, and VII should be dismissed as "not ripe for adjudication." [248] at 5–7; [249] at 5–6. In their reply briefs, they appear to have amended that argument to encompass Counts I and VI only. [260] at 2; [262] at 2. Defendants' ripeness argument, however, focuses upon the notion that courts typically postpone indemnification decisions until after they establish underlying liability, [248] at 5–7; [249] at 5–7; [260] at 2; [262] at 2, and only Count I of the cross-claim seeks indemnification, *see* [238] at Count I (indemnification). Thus, Defendants ostensibly direct their jurisdictional arguments only to Count I.

Under Illinois' version of the Uniform Commercial Code (UCC), a seller who is a merchant regularly dealing in goods "warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like." 810 Ill. Comp. Stat. Ann. 5/2-312(3). In other words, Section 2-312(3) of the Illinois UCC entitles the buyer of an infringing good (here, Chicago Import) to indemnification from the seller (Guru and the Choice Defendants) for any "rightful claims" by a third party (BIC) for infringement.

7

Seizing on the phrase "rightful claim," Defendants argue that the "underlying liability for trademark infringement . . . never will be . . . fully adjudicated" because their settlement with the original Plaintiff, BIC, did not contain admissions of liability. [260] at 2; *see also* [262] at 2. This argument assumes that the phrase "rightful claim" means a meritorious or prevailing claim. Neither Illinois courts nor the Seventh Circuit has interpreted the phrase "rightful claim"; those courts that have done so, however, have not adopted Defendants' interpretation. Indeed, the few courts that have interpreted identical UCC provisions have found that the meaning of "rightful claim" falls "somewhere between purely frivolous claims, at one end, and claims where liability has been proven, at the other." *84 Lumber Co. v. MRK Techs., Ltd.*, 145 F. Supp. 2d 675, 680 (W.D. Pa. 2001); *see also Phoenix Sols., Inc. v. Sony Elecs., Inc.*, 637 F. Supp. 2d 683, 696 (N.D. Cal. 2009) (observing that the California court of appeals determined that the phrase covers "a broad scope of infringement claims . . . not limited to claims that ultimately will prove successful in litigation" and "except[s] only frivolous claims that are completely devoid of merit") (quoting *Pac. Sunwear of Cal., Inc. v. Olaes Enters., Inc.*, 84 Cal. Rptr. 3d 182, 193 (Cal. Ct. App. 2008)); *EZ Tag Corp. v. Casio Am., Inc.*, 861 F. Supp. 2d 181, 184 (S.D.N.Y. 2012) (noting that "a claim of infringement must have some merit beyond being 'nonfrivolous' for Rule 11 purposes").

In the absence of controlling precedent, this Court adopts a plain language construction of the operative phrase, and consistent with the available persuasive authority, finds that the phrase "rightful claim" under the Illinois UCC does not

require an admission or adjudication of liability, as Defendants contend. And further, since the issue of "rightfulness" requires resolution of fact issues not well-suited for a motion to dismiss, this Court denies Defendants' Rule 12(b)(1) motions to dismiss Count I. *See, e.g., Creation Supply, Inc. v. Alpha Art Materials, Co.*, No. 3:13-CV-01033-BR, 2013 WL 5729709, at *4 (D. Or. Oct. 21, 2013) (denying summary judgment as to the "rightfulness" of a claim under the UCC).

### B. Rule 12(b)(2) Personal Jurisdiction Arguments

#### 1. Guru

Guru also moves pursuant to Rule 12(b)(2) to dismiss for lack of personal jurisdiction, arguing that this Court cannot exercise either general or personal jurisdiction over him due to his purported lack of contact with the State of Illinois. [248] at 8–13. Chicago Import responds that Guru has waived any objection to personal jurisdiction because he already entered into a permanent injunction order in this Court, and the order did not include an express reservation of his defense to personal jurisdiction. [255] at 9–10. This Court agrees that Guru's entry into a permanent injunction order in this Court constitutes a waiver.

To waive a personal jurisdiction defense, "a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). As another court in this district has observed, "it is hard to imagine conduct that more affirmatively signals a waiver

9

of a personal jurisdiction defense than when a defendant voluntarily submits and subjects itself to the equitable powers of the forum court." *Armoloy Corp. v. Indus. Hard Chromium Co.*, No. 02 C 50071, 2002 WL 1284286, at *1 (N.D. Ill. June 5, 2002); *see also, e.g.*, *Aeration Sols., Inc. v. Dickman*, 85 F. App'x 772, 774 (Fed. Cir. 2004) (holding that the district court abused its discretion by concluding that the defendants did not waive personal jurisdiction by consenting to an injunction in the case); *Gus's Franchisor, LLC v. Terrapin Rest. Partners, LLC*, No. 2:20-CV-2372-JPM-CGC, 2020 WL 6878358, at *4 (W.D. Tenn. Nov. 23, 2020) (finding that the defendants waived their personal jurisdiction arguments by consenting to the entry of a permanent injunction).

An exception to this general rule exists where a defendant enters into a stipulated injunction order that expressly reserves his or her right to assert defenses. *See, e.g.*, *LG Corp. v. Huang Xiaowen*, No. 16-CV-1162 JLS (NLS), 2017 WL 2504949, at *2 (S.D. Cal. June 8, 2017) (finding no waiver of personal jurisdiction where, although the defendant had entered into a consent order at the outset of the case, he also "reserved all of its defenses."); *cf. Thursday LLC v. Klhip Inc.*, No. 8:17-CV-1587-T-36AEP, 2018 WL 4216389, at *5 (M.D. Fla. Sept. 5, 2018) (ruling that the defendants waived their personal jurisdiction defense by entering into a preliminary injunction order "without making or reserving any objection"). Guru did not make any such reservation here. *See* [220]. This Court accordingly holds that Guru has waived any personal jurisdiction defense and denies his motion to the extent based upon Rule 12(b)(2).

10

### 2. CTIL

Third-party Defendant CTIL also moves to dismiss for lack of personal jurisdiction, arguing that it lacks the necessary contacts for this Court to exercise either general or specific personal jurisdiction over it. [250] at 4–7. Chicago Import responds by arguing that CTIL constitutes a successor corporation and/or alter ego of Choice Trading International, and, as a result, Choice Trading International's jurisdictional admissions, *see* [73] at ¶ 31, may be imputed to CTIL, [253] at 5–8.

This Court agrees that Chicago Import has alleged sufficient facts to proceed under a successor liability theory of personal jurisdiction against CTIL. In the "corporate successor context, the successor corporation has chosen to stand in the shoes of its predecessor and has chosen to accept the business expectations of those who have dealt previously with that predecessor. Therefore, it can be expected to be haled into the same courts as its predecessor." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 784 (7th Cir. 2003). The Illinois appellate court's decision in *Hoppa v. Schermerhorn & Company* is instructive here. 630 N.E.2d 1042 (Ill. App. Ct. 1994).[1] There, the court recognized that successor liability exists under certain limited circumstances, including when a company "is a mere continuation" of a prior one. *Id.* at 1045. Applying that principle, the court held, a newly organized company constituted a "continuation of" a dissolved predecessor company because the two companies had the same controlling shareholders, conducted business from the same

---

[1] The parties agree to apply forum law in determining successor liability. [253] at 7; [263] at 6–7.

11

address using the same telephone number, managed the same property, employed the same staff, and maintained the same bank accounts. *Id.* at 1046.

Chicago Import puts forth similar facts under a "mere continuation" theory of successor liability. It points to the deposition of Guru, who testified that the business of CTIL is no different than the business of Choice Trading International, [238] at 124, and that the two entities share the same customers, all of the same suppliers, the same equipment, and the same place of business, *id.* Additionally, Guru is the owner of CTIL, *id.* at 122, as he was of Choice Trading International, *id.* at 124. This suffices to demonstrate a prima facie case of successor liability under *Hoppa*, and thus, this Court appropriately imputes Choice Trading International's admission of personal jurisdiction to CTIL. *See, e.g.*, *Playboy Enterprises Int'l, Inc. v. Smartitan (Singapore) PTE Ltd.*, 804 F. Supp. 2d 730, 736 (N.D. Ill. 2011) (holding that the plaintiff established a prima facie case of personal jurisdiction where the record demonstrated that the defendant was the successor of a dissolved corporation); *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, No. 18 CV 4971, 2019 WL 3302223, at *11 (N.D. Ill. July 23, 2019) (finding personal jurisdiction on a successor liability theory where the successor provided similar services, shared some of the same personnel, and the successor purchased some of the predecessor's assets). This Court denies CTIL's motion to the extent based upon Rule 12(b)(2).

## C. Rule 12(b)(6) Arguments

### 1. UCC Counts

Guru and the Choice Defendants also seek dismissal of the UCC counts based upon a lack of notice. [260] at 4–5; [262] at 4–5. Under the Illinois UCC, "if the claim is one for infringement . . . and the buyer is sued as a result of such a breach he must so notify the seller within a reasonable time after he receives notice of the litigation or be barred from any remedy over for liability established by the litigation." 810 Ill. Comp. Stat. 5/2-607(b)(3). This notice provision serves "to encourage pre-suit settlement negotiations" and "applies to all the various beneficiaries of an implied or express warranty in addition to the purchaser of the goods." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 715 (N.D. Ill. 2020) (first quoting *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007); then quoting *Maldonado v. Creative Woodworking Concepts, Inc.*, 694 N.E.2d 1021, 1025 (Ill. App. Ct. 1998)). Illinois courts excuse the UCC's notice requirement, however, when the seller "has actual knowledge of the defect of the particular product." *Terrazzino v. Wal-Mart Stores, Inc.*, 335 F. Supp. 3d 1074, 1086 (N.D. Ill. 2018) (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 589 (Ill. 1996)).

Relying upon the UCC notice provision, Guru and the Choice Defendants argue that Chicago Import's UCC-based claims all fail because Choice Import did not "demand" defense and indemnification until October 2019, about one year after BIC originally filed suit against Chicago Import in November 2018 (at which time it had not yet named other defendants). [248] at 7–8; [249] at 7–8; *see also* [1]. This argument

13

ignores the cross-claim's allegations that Guru bought the offending lighters in Dubai, knew or should have known that the lighters could not be sold in the United States, deliberately mislabeled the lighters, and shipped them as "Gillette Fusion" razors to avoid detection by customs. [238] at ¶¶ 133–48. These allegations more than sufficiently allege Defendants' actual knowledge that they were infringing BIC's marks, thus excusing Chicago Import from the UCC's pre-suit notice provision. *See Connick*, 675 N.E.2d at 590 (holding that notice is unnecessary where the seller is "somehow apprised of the trouble with the particular product purchased by a particular buyer"); *see also, e.g.*, *Stella v. LVMH Perfumes & Cosms. USA, Inc.*, 564 F. Supp. 2d 833, 837 (N.D. Ill. 2008) (denying motion to dismiss for failure to provide pre-suit notice where the complaint alleged that the seller had actual knowledge of the presence of lead in lipstick). This Court therefore denies Defendants' motions to the extent based upon the UCC pre-suit notice provision.

### 2. Count IV: Alter Ego Liability

Guru and the Choice Defendants also seek dismissal of Count IV, a claim Chicago Import labeled "Alter Ego/Piercing the Corporate Veil." They argue that this claim's allegations fail to sufficiently state that Guru and the Choice Defendants constitute alter egos of one another. [248] at 13; [249] at 8–12. Although Defendants initially cited Illinois law to support their arguments, they appear to concede in their reply that New Jersey law, as the state of the Choice Defendants' incorporation, governs the alter ego analysis. *Compare id. with* [262] at 6–9; *see also Wachovia Sec.,*

*LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012) (federal courts sitting in Illinois apply "the law of the state of incorporation for veil piercing claims").

New Jersey law allows courts to pierce the corporate veil to make a corporation's principals and their personal assets liable for the corporations' debts, or alternatively, to make the corporation's debts available to satisfy the debts of a corporate insider. *Hunt Const. Grp., Inc. v. Farina*, No. CIV. 11-4933 FSH PS, 2012 WL 72286, at *3 (D.N.J. Jan. 10, 2012). Under New Jersey law, courts allow veil piercing when two elements exist: "[1] a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and [2] the circumstances must indicate that adherence to the fiction of a separate corporate existence would sanction a fraud or promote injustice." *Hunter v. Better Speech & Feeding Ctr., Inc.*, No. 18-CV-10556 (RMB/JS), 2021 WL 62603, at *2 (D.N.J. Jan. 7, 2021); *see also Unimaven, Inc. v. Tex. TR, LLC*, No. CV1712008SDWLDW, 2020 WL 5406162, at *9 (D.N.J. Sept. 8, 2020). Courts evaluate a number of factors in assessing the first element, including: (1) gross undercapitalization; (2) the failure to observe corporate formalities; (3) the non-payment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of funds of the corporation by the dominant stockholder; (6) non-function of other officers or directors; (7) the absence of corporate records; and (8) the fact that the corporation is merely a façade of the operations of the dominant stockholder or stockholders. *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988) (applying New Jersey law); *Toll JM EB Residential Urb. Renewal LLC v. Tocci Residential, LLC*, No. CV 16-5422 (PGS), 2020 WL 2571980, at

15

*5 (D.N.J. May 21, 2020). As to the second element, the plaintiff need not establish actual fraud, but rather the "less rigid standard of fraud, injustice, or the like." *Toll JM*, 2020 WL 2571980, at *5 (internal quotation marks omitted).

Under these standards, Chicago Import has plausibly pled its alter ego claim. As to the first element, Chicago Import has alleged a number of facts, including that: (1) Guru owns or has owned both Choice Defendants, has operated them as sole proprietorships, and exercises or has exercised complete discretion and control over them; (2) Guru has failed to maintain the two Choice Defendants as separate entities and to observe corporate formalities; (3) neither company ever had an operating agreement; (4) the companies shared common space and equipment, and Guru used his cell phone for both his personal business and the businesses of the companies; and (4) upon information and belief, Guru has intentionally undercapitalized the companies and has commingled the assets of the companies. [238] at ¶¶ 31–33, 42, 51, 54–55, 71–72. Based upon these allegations, this Court finds it plausible that there exists a unity of ownership and identity among Guru and the Choice Defendants. Chicago Import thus satisfies the first element of alter ego liability under New Jersey law.

As to the second element, Chicago Import asserts that, at the time of the dissolution, Guru knew of BIC's infringement claims and knew that Choice Trading International "was listed as the seller on invoices to Chicago Import evidencing the sale of illegal Gray Market Lighters," and alleges that Guru deliberately dissolved Choice Trading International and stripped it of its assets to escape liability. *Id.* at ¶¶ 78, 80.

These allegations plausibly suggest that adhering to the default rule of separate corporate existence would be unjust, satisfying the second element of alter ego liability under New Jersey law. This Court therefore denies Defendants' motion to dismiss Count IV.

### 3. Count V: Successor Liability

CTIL moves to dismiss Chicago Import's claim for successor liability in Count V, arguing that because Chicago Import has not alleged that CTIL purchased the assets of Chicago Trading International, CTIL may not be deemed its successor. [263] at 6–7. But, as discussed above, Illinois law does not require an asset purchase to find successor liability. Instead, Illinois courts can find the existence of a successor corporation if that entity is a mere continuation of a prior entity, and that test focuses upon "a common identity of officers, directors, and stock between" the two corporations. *Jetstream of Houston, Inc. v. Aqua Pro Inc.*, No. 08-CV-7380, 2010 WL 669458, at *7 (N.D. Ill. Feb. 22, 2010) (quoting *Vernon v. Schuster*, 688 N.E.2d 1172, 1176 (Ill. 1997)); *see also Hoppa*, 630 N.E.2d at 1045, 1046. For the same reasons explained above, this Court finds that Chicago Import has plausibly pled that CTIL constitutes a successor corporation of Chicago Trading International and thus denies CTIL's motion to dismiss Count V.

### 4. Count VII: Liability for Dissolution

Finally, all of the cross-claim and third-party Defendants move to dismiss Chicago Import's claim in Count VII for "Liability of Guru Taneja, Choice Trading, LLC, and CTIL for the Dissolution of Choice Trading International." In this count, Chicago

17

Import faults the various Defendants for violating New Jersey statutory provisions stating that in "winding up its activities, a limited liability company shall apply its assets to discharge its obligations to creditors," N.J. Stat. Ann. § 42:2C-56, and that a "dissolved limited liability company may publish notice of its dissolution and request persons having claims against the company to present them in accordance with the notice," N.J. Stat. Ann. § 42:2C-51.

Defendants argue that Chicago Import fails to allege that it is a "creditor" entitling it to notice of Chicago Trading International's dissolution and debt pay-off. [249] at 12; [260] at 9–10; [263] at 7. This argument lacks merit. Under the New Jersey code, a "creditor" means "a person who has a claim," and "claim" means a "right to payment, whether or not the right is reduced to judgment, . . . legal, equitable, secured, or unsecured." N.J. Stat. Ann. § 25:2-21. As Chicago Import alleges, Guru dissolved Choice Trading International during this litigation and after it sold gray market lighters to Chicago Import. [238] at ¶¶ 74–75. Accordingly, Chicago Import has plausibly pled that it had a "claim" and therefore is, by definition, a "creditor" under the New Jersey Code. This Court denies Defendants' motion to dismiss Count VII.[2]

---

[2] This Court disregards CTIL's argument, in an undeveloped footnote, that this Court should also dismiss Counts I, II, and IV against it. *See Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013) ("We have often said that a party can waive an argument by presenting it only in an undeveloped footnote"). Although CTIL also includes Count VII in that footnote, it did more fulsomely address that count in its reply brief, and thus, this Court considers that count on its merits.

**IV.     Conclusion**

For the reasons explained above, this Court denies Defendants' motions to dismiss [242]; [244]; [248]; [249]; [250]. This Court also denies Chicago Import's motion to compel [266], as many of the parties' arguments concerned whether Chicago Import's document requests were responsive and proportional to the needs of the case, given that the parties had not yet had the benefit of this Court's ruling on Defendants' motions to dismiss. Now that the parties have this Court's ruling, they shall meet and confer and work cooperatively on the remaining discovery. This Court sets a new fact discovery deadline of September 20, 2021. The parties shall file a status report by September 6, 2021, advising this Court of their progress, whether they require expert discovery, and whether any party intends to file a dispositive motion.

Dated: May 19, 2021

Entered:

_____
John Robert Blakey
United States District Judge